IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>v.<br><br>Martha Edilia Solano,<br><br>                    Defendant. | No. CR 14-01558-CKJ (CRP)<br><br>**REPORT & RECOMMENDATION** |

Defendant Martha Edilia Solano is charged with knowingly and intentionally possessing methamphetamine with intent to distribute a Schedule II controlled substance in violation of Title 21, United States Code, § 841(a)(1) and § 841(b)(1)(C). (Doc. 10) Additionally, defendant is charged with knowingly and intentionally importing methamphetamine into the United States from the Republic of Mexico in violation of Title 21, United States Code, §§ 952(a), 960(a)(1) and (b)(3). (*Id*.)

Pending before the Court is Defendant's Motion for Disclosure (Doc. 25) requesting that this Court order the disclosure of Rule 16 and *Brady* materials. The Motion requests information regarding the source of a "be on the look out" (BOLO), which triggered the secondary inspection of Defendant's vehicle at the border and information relating to Jose Luis Enriquez-Bojorquez, including criminal history. (Motion, p. 3) On April 15, 2015, a motion hearing was held before this Court. (Doc. 53) By separate order on April 17, 2015, this Court ordered the Government submit the requested information for *in camera* review to the Court (Doc. 54) Government submitted the available information to the court *in camera* on May 14, 2015 and this matter was taken under advisement at that time.

For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion.

**FACTS**

Defendant, her co-defendant and sister Brenda Menzoza-Bojorques, Mendoza-Bojorquez's two children, and the women's mother traveled to Nogales, Sonora, Mexico together on August 24, 2014. (Motion, p. 2; Response, p. 1) Defendant drove a 2003 Chevrolet Trailblazer, registered in her name, to the Port of Entry in Nogales, Arizona in an attempt to reenter the United States. (Doc. 1) Upon arrival at the Port of Entry, the vehicle was sent through a secondary inspection. (*Id.*) This secondary inspection was attributable to a BOLO alert describing a Chevrolet Trailblazer potentially carrying illegal contraband. (Motion, p. 1; Response, p. 3) During the secondary inspection, an x-ray of the vehicle showed anomalies within the seats and a K-9 alerted to the scent of narcotics within the vehicle. (Doc. 1; Response, p. 3) Further scrutiny of the car seats resulted in the discovery of 17.25 kilograms of crystal methamphetamine. (*Id.*)

Defendant agreed to answer questions after being advised of her *Miranda* rights. (*Id.*) Defendant explained that she and her family drove to Nogales to shop and visit Brenda Mendoza-Bojorquez's husband. (Motion p. 2; Response p. 2) Jose Luis Enriquez-Bojorquez, Mendoza-Bojorquez's husband and father of her two children, lives in Nogales, Sonora. (*Id.*) Defendant reported that Enriquez-Bojorquez met the family in Nogales, and said that he needed the keys to the Trailblazer to make repairs to the tires. (Motion, p. 2; Response, p. 2)

Defendant handed over the keys of the Chevy Trailblazer to Enriquez-Bojorquez, and the family took a taxi for their remaining errands in Mexico. (Doc. 1) The vehicle was in the custody of Enriquez-Bojorquez for approximately an hour to two hours. (Motion, p. 2; Response, p. 2) The defendant then retrieved the vehicle, and attempted to return to the United States. (Response, p. 2) The defendant remarked to Border Patrol that she was tired and did not feel a difference in the seatbacks after reacquiring the car. (Doc. 1; Response, p. 2) Defendant was subsequently placed under arrest.

Defendant claimed that Enriquez-Bojorquez secreted the methamphetamine into

the car without her consent or knowledge. (Motion, p. 3) Mendoza-Borjoquez initially stated that she did not meet with her husband while in Mexico, however, she later admitted that she did see him and that he did take the Trailblazer for a period of time. (*Id*.; Response, p. 3)

**DISCUSSION**

Defendant moves this Court for the disclosure of the source of the BOLO and requests the Government disclose all information, including criminal records, related to Enriquez-Bojorquez. Defendant premises this request on *Brady v. Maryland*, arguing that the requested disclosure is potentially exculpatory and material to guilt or punishment.

**Source of the BOLO**

Defendant requests that the Government reveal the identity of a confidential informant ("CI") who provided information to border patrol leading to a BOLO report. The Government may "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with the enforcement of law" *Rovario v. United States*, 353 U.S. 53, 59 (1957). The defendant bears the burden of demonstrating the need to release the identity of a confidential informant. *United States v. Buffington*, 815 F.2d 1292, 1299 (9th Cir. 1987); *United States v. Alexander*, 761 F.2d 1294, 1303 (9th Cir. 1985). A defendant's "mere suspicion that information will prove helpful is insufficient to require disclosure." *United States v. Wong*, 886 F.2d 252, 256 (9th Cir. 1989) *citing United States v. Buffington*, 815 F.2d 1292, 1299 (9th Cir. 1987).

In determining when the release of a CI's identity is appropriate, courts utilize a balancing test weighing "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Rovario v. United States*, 353 U.S. 53, 62. When applying the balancing test, each case is scrutinized independently depending on the specific facts presented. *Id*. ("Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case . . ."). If the defense can show that the informant's identity is "essential to a fair determination of a cause, the privilege must give way." *Id*. at 60–61. Otherwise, disclosure is not appropriate.

In weighting the decision, an informant's materiality to the case is considered. *See*

*Rovario*, 353 U.S. at 55, 62 (analyzing an informant's level of involvement in a crime to determine materiality). To determine the materiality of a CI, three factors may be assessed: (1) "the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure." *United States v. Gonzalo Beltran*, 915, F.2d 487 (9th Cir. 2009).

If an informant is not a material witness, identification of the informant is not typically required because the informant is unlikely to exonerate the defendant. *See Beltran*, 915 F.2d at 489 (determining that if a witness is immaterial, withholding their identity would not yield an unfair trial); *Williams v. Superior Court*, 38 Cal.App.3d 412, 420 (1974) (reasoning that when an informant is nonmaterial, they are unlikely to exonerate the defendant, and therefore disclosure is not warranted); *People v. Hardeman*, 137 Cal.App.3d 823, 828–29 (1982) (stating that if an informant was not a "percipient witness" to events, there is likely not a cause to disclose the identity of the informant).

The Government may withhold the identity of a confidential informant if that action does not "prevent the defendant from receiving a fair trial." *Beltran*, 915 F.2d at 489. The rights of the defendant are not disrupted "unless the defendant shows that the testimony of the witness would have been material and favorable or the defendant shows that the government's actions . . . denied him a fair trial." *Id.* If an informant is not a direct witness or participant in the crime there is "no reason to believe that the informer" could provide information which would benefit the defendant at trial. *United States v. Anderson*, 509 F.2d 724, 730 (1975). Therefore, an informant is immaterial if an informant does not possess information necessary to mount a proper defense. I *United States v. Alexander*, 761 F.2d 1294, 1303 (1993) (holding that an informant who does not play a "central" role in the crime is immaterial).

Finally, the Government's privilege to withhold information about an informant arises from the "obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials, and by preserving their anonymity, encourage them to preform that obligation." *Rovario*, 353 U.S. at 59. When the balance

tips in favor of protecting the informant, the Government's privilege holds. *See Id*. at 62 (determining that the balancing test should include analysis of the public interest in maintaining a flow of information).

Here, the source of the BOLO was not a percipient witness and did not observe nor participate in the charged criminal activities. The source did not have direct contact with Defendant during the alleged criminal conduct, and is therefore unable to exculpate her of the charges. Additionally, there is no relationship between the informant's potential testimony and Defendant's asserted defense. The Defendant will not be prejudiced at trial without the requested information regarding the source of the BOLO. Thus, the witness is not material and disclosure is inappropriate under these circumstances.

Maintaining the flow of information between those with knowledge of crimes and police provides a positive benefit to society. These individuals face risks by reporting these wrongdoings, and therefore there is a valid purpose to keep their identity secured. Without this assuredness of protection, confidential informants would likely find the risks too great. The interest of protecting the identity of those who report criminal activity is an important public policy argument which is not overcome by the facts presented in this case. Furthermore, the suspicion that the informant holds relevant information is insufficient to authorize the disclosure of the source of the BOLO. The balance here tips in favor of the Government's argument.

**Information on Jose Luis Enriquez-Bojorquez**

Information that is "material either to guilt or punishment" must be presented to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Much like a confidential informant's information, evidence that might exculpate a defendant is highly material to a defendant's case and should not be withheld. *Id*. at 87–88. When determining whether disclosure is appropriate under *Brady*, "the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching . . ." *Strickler v. Greene*, 527 U.S. 263, 263 (1999). Furthermore, the Court must determine any prejudicial effect of withholding information, by analyzing "whether admission of the

suppressed evidence would have created a 'reasonable probability of a different result'" at trial. *United States v. Price*, 566 F.3d 900, 911 (2009) (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)) (internal quotations omitted).

The information provided in the *in camera* review is not material to the defense in this case. Enriquez-Bojorquez's criminal history is *de minimus*, cannot exculpate Defendant or provide impeachment evidence, and therefore does not rise to the requirements under *Brady*. Withholding this information does not raise a probability of a different result at trial. Because the information is not favorable to the accused, and would not ultimately change the outcome of a trial, the information need not be disclosed. Accordingly, because the criminal history and background information about Enriquez-Bojorquez is not relevant to the defense, there is no cause to disclose that information in this case.

**CONCLUSION**

After a review of the *in camera* material, this Court finds that Defendant has failed to show that the information requested was sufficiently material to her case so as to warrant disclosure. Because there is no cause to release the information regarding the confidential informant or the background information on Enriquez-Bojorquez, withholding the requested information does not violate the standards set forth in *Brady*.

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, deny Defendant's Motion for Disclosure. (Doc. 25)

Pursuant to 28 U.S.C. §636(b), the parties have **FOURTEEN (14) DAYS** from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court.  Any Objections and Responses to Objections filed should be filed as **CR 14-01158-CKJ**.  No Replies shall be filed unless leave is granted from the District Court.

1   Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver
2 of the right to review.
3   Dated this 11th day of June, 2015.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE